**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YOUN KYUNG PARK,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 07-74420

Agency No.
A079-144-016

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 20, 2008—Honolulu, Hawaii

Filed July 9, 2009

Before: Mary M. Schroeder, Richard A. Paez and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

8527

## COUNSEL

Ronald T. Oldenburg, Waipahu, Hawaii, for petitioner Youn Kyung Park.

Jesse M. Bless, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for respondent Attorney General Holder.

---

## OPINION

N.R. SMITH, Circuit Judge:

Giving deference to the reasonable interpretation of the term "domicile" by the Board of Immigration Appeals (BIA), *see Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984), substantial evidence supports its determination that Joseph Higa ("Higa") did not qualify as a sponsor, because he was not domiciled in the United States as required by 8 U.S.C. § 1183a(f). Therefore, Youn Kyung Park ("Park") failed to demonstrate her eligibility for adjustment of status due to her lack of a qualifying sponsor. We also hold that Park lacks standing to pursue Higa's constitutional claims. Accordingly, we deny the petition for review.

## I. Factual Background

Park is a native and national of South Korea. Park entered the United States as a nonimmigrant visitor on October 13, 1998. Park subsequently received a student visa, but failed to maintain her status as a student. The former Immigration and Naturalization Service (INS)[1] charged Park with removability. The Immigration Judge (IJ) found that Park was removable as charged because she failed to maintain her student status, but granted Park two weeks to voluntarily depart the United States. On appeal, the BIA summarily affirmed the IJ's decision.

---

[1] On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly created Department of Homeland Security. *See Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030, 1032 n.1 (9th Cir. 2008).

Park then (1) requested that the BIA reopen her case and (2) applied for adjustment of status to lawful permanent resident on the basis of her marriage to Higa, a United States citizen. As part of Park's application, Higa filed a Petition for Alien Relative (or Form I-130 petition) along with an Affidavit of Support (Form I-864) in order for Park to receive status as an "immediate relative" spouse. In support of Higa's I-130 petition, Luke Hwang also filed an I-864 Affidavit of Support as a joint sponsor.[2] Initially, the BIA denied Park's motion to reopen, because she failed to voluntarily depart. After filing a petition for review of the denial of the motion to reopen, our court remanded the case to the BIA to determine when Park's voluntary departure time commenced (thereby providing Park additional time to apply for adjustment of status). Upon remand, the BIA granted the motion to reopen and allowed Park to apply for adjustment of status before the IJ. After a hearing, the IJ determined that Park failed to establish her eligibility for adjustment of status because Higa (her husband and sponsor) was not domiciled in the United States. The BIA upheld the IJ's decision, which is the subject of this appeal.

In determining that Higa was not domiciled in the United States, the IJ applied the definition of domicile contemplated by 8 C.F.R. § 213a.1. After considering the evidence, the IJ found that, shortly after marrying Park in February 2002, Higa moved to Japan. Higa worked in Japan as an assistant bar manager. In June 2002, Higa returned to Hawaii. In the summer of 2003, Higa returned to Japan to teach English for a Japanese company and has lived there ever since. The Japanese government issued Higa a "family working visa," which is issued to long-term residents of Japan. At the time of the adjustment of status hearing in 2001, Higa had resided in Japan for three years, owned no property in the United States (Park lived rent free in her employer's apartment), and

---

[2]Park argued to the IJ and the BIA that Hwang's affidavit obviated the need for an affidavit from Higa. However, Park's counsel withdrew this argument before us.

(though maintaining a joint bank account with Park in Hawaii) had a personal bank account in Japan. Higa also stated that he had not voted in Hawaii.

During this three year period, Higa visited Park in Hawaii three times: once for a week; the second time for three to four days; and the last time to testify before the IJ. Higa's long-term plan was to return to Hawaii and open a business, but he could not identify specific dates for his return. On the basis of the foregoing, the IJ and the BIA found that Higa was not domiciled in the United States.

## II.    Standard of Review

The BIA here conducted its own review of the evidence and law, rather than adopting the IJ's decision. Therefore, the court's "review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (internal quotation marks omitted).

We review de novo an agency's interpretation of a statute. *Cervantes-Gonzales v. INS*, 244 F.3d 1001, 1004 (9th Cir. 2001). We apply *Chevron* deference and uphold permissible interpretations of the statute by the agency. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

## III.   Discussion

### A.    *The agency's interpretation of "domicile" is reasonable.*

"The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immi-

grant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). In this appeal, the parties only address the second requirement of § 1255(a).

**[1]** To be eligible for an immigrant visa, an alien must file a visa petition pursuant to 8 U.S.C. § 1154. The visa petition is the alien's opportunity to show evidence that she may be classified in one of the family or employment categories listed in 8 U.S.C. § 1153. When applying for an immigrant visa, an alien must also demonstrate admissibility pursuant to 8 U.S.C. § 1182. This provision renders aliens inadmissible for several reasons, including an indication that the alien is likely to become a public charge. *Id.* at § 1182(a)(4). To avoid becoming a public charge, § 1182 requires that the alien have a sponsor. It states in pertinent part:

> Any alien who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible . . . . unless . . .
>
> (ii) the [sponsor] petitioning for the alien's admission . . . has executed an affidavit of support described in section 1183a of this title with respect to such alien.

8 U.S.C. § 1182(a)(4).

**[2]** Section 1183a(f) requires that the sponsor: (1) be a United States citizen, (2) be 18 years old, (3) be domiciled in the United States, and (4) have an annual income equal to at least 125 percent of the Federal poverty line. *See* 8 U.S.C. § 1183a(f).

Although the statute does not define domicile, the Attorney General promulgated a regulation defining it as:

> [T]he place where a sponsor has his or her principal residence, as defined in section 101(a)(33) of the Act, with the intention to maintain that residence for the foreseeable future.

8 C.F.R. § 213a.1. Section 101(a)(33) of the INA defines "residence" as: "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." INA § 101(a)(33); 8 U.S.C. § 1101(a)(33).

**[3]** Although a sponsor must be domiciled in the United States, a person may qualify as a sponsor if he is not currently living in the United States. However, the sponsor must only be temporarily residing abroad. 8 C.F.R. § 213a.2(c)(1)(ii) requires the sponsor to prove, "by a preponderance of the evidence, that the sponsor's domicile remains in the United States, provided, . . . that a citizen who is living abroad temporarily is considered to be domiciled in the United States if the citizen's employment abroad meets the requirements of section 319(b)(1) of the Act." Additionally, if the sponsor is not domiciled in the United States, the sponsor can submit a Form I-864 if the sponsor proves, by a preponderance of the evidence, that the sponsor will establish a domicile in the United States on or before the date of the alien's admission or adjustment of status. 8 C.F.R. § 213a.2(c)(1)(ii)(B).

**[4]** At issue in this appeal is whether intent to maintain a residence is required for domicile. Section 213a.1 of the regulations requires both a residence and an intent to maintain that residence for the foreseeable future. Residence requires only a place of general abode without regard to intent. *See* 8 U.S.C. § 1101(a)(33). Park argues that the terms are therefore in conflict. We disagree.

When we review the Attorney General's interpretation of a provision of the Immigration and Nationality Act (INA), we apply the two-step inquiry set forth by the Supreme Court in *Chevron*. We ask (1) "whether Congress has directly spoken to the precise question at issue," *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 (9th Cir. 2007), and, if not, (2) "whether the agency's answer is based on a permissible construction of the statute," *id.* at 492 *(quoting Chevron*, 467 U.S. at 843). In determining the second step of the *Chevron* analysis, "we 'need not conclude that the agency construction was the only one it permissibly could have adopted . . . , or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.' " *Id.* (quoting *Chevron*, 467 U.S. at 843 n.11). "Rather, 'Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.' " *Id.* (citations omitted). "Generally, [w]e accord Chevron deference where there is binding agency precedent on-point (either in the form of a regulation or a published BIA case)." *Ramos-Lopez v. Holder*, 563 F.3d 855, 858-59 (9th Cir. 2009) (internal citation and quotation marks omitted).

**[5]** Because section 1183a(f) is silent regarding the meaning of domicile, we must assess whether the agency's interpretation is " 'based on a permissible construction of the statute.' " *Aguirre-Aguirre*, 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843). Here, the agency defined the term "domicile" in 8 C.F.R. § 213a.1 to be "where a sponsor has his or her principal residence . . . with the intention to maintain that residence for the foreseeable future." 8 C.F.R. § 213a.1. In adopting this definition of domicile, the agency explained that "[t]he term 'domicile' is defined in accordance with the generally accepted definition of the term." Affidavits of Support on Behalf of Immigrants, 62 Fed. Reg. 54,346, 54,347 (October 20, 1997) (to be codified at 8 C.F.R. pts. 213a and

299). We agree and conclude that the agency's definition is based on a permissible construction of the statute.

**[6]** This court has similarly combined both physical presence and the intent to remain in giving domicile its "common law definition" on several occasions. *See, e.g., Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1023 (9th Cir. 2005) (noting "the common law definition of 'lawful domicile' means the simultaneous existence of lawful presence and the lawful intent to remain."); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."); *Carlson v. Reed*, 249 F.3d 876, 883 (9th Cir. 2001) (recognizing "The five-year limitation on the alien's stay does not preclude the alien from establishing domicile in the United States, given that domicile is traditionally defined as not only the place where one intends to remain, but also the place to which, whenever absent, one has the intention of returning."); *Lepe-Gitron v. INS*, 16 F.3d 1021, 1025 (9th Cir. 1994) (noting in the context of section 212(c), that this court had adopted a "definition of domicile consonant with its common law meaning: that 'aliens must not only be physically present here, but must intend to remain.' "). Given our own definition of the word "domicile" in other contexts, there is nothing unreasonable about the agency's definition in 8 C.F.R. § 213a.1.

## B.    *Substantial evidence supports the BIA's finding that Higa was not domiciled in the United States.*

**[7]** Because the agency's definition of domicile is reasonable, we must next determine whether substantial evidence supports the BIA's finding that Higa was not domiciled in the United States. We conclude that it does.

"The substantial evidence test is essentially a case-by-case analysis requiring review of the whole record. Substantial evi-

dence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir. 1987) (internal citation omitted).

Domicile requires an "intention to maintain that residence for the foreseeable future." 8 C.F.R. § 213a.1. The intention to remain may be established by factors such as: current residence; voting registration and practices; location of personal and real property; location of brokerage and bank accounts; location of spouse and family; membership in unions and other organizations; place of employment or business; driver's license and automobile registration; and payment of taxes. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). If the applicant's statements conflict with the evaluated "objective facts," then those "statements of intent are entitled to little weight." *See id.* (internal quotation marks and citations omitted).

**[8]** The BIA reviewed this record and determined that the "objective facts" demonstrated that Higa was not domiciled in the United States. Substantial evidence supports this determination. Higa (1) has been working in Japan for more than three years; (2) has briefly visited the United States during that time period; (3) has indefinite employment in Japan; (4) pays taxes in Japan; (5) has a bank account in Japan; and (6) does not own any property in the United States. These facts support the BIA's decision that Higa was not domiciled in the United States, because he lacked a present intent to live in Hawaii.

**[9]** While Higa testified that he intended to return to Hawaii, he could not provide any specific time to return. He testified that his goal is to earn money and to gain experience, in order to open a school in Hawaii. These goals do not reflect a present intent to live in the United States for the foreseeable future, but instead are indefinite in time. Because these state-

ments conflict with the "objective facts," such statements are also entitled to little weight.

### C.   Park does not have standing to contest Higa's constitutional claims.

Lastly, Park argues that requiring Higa to be domiciled in the United States denies Higa due process and equal protection of the law, by denying Higa's right to travel and by discriminating against Higa on religious grounds. However, Park has no standing to contest these constitutional claims.

"As a general rule, a third party does not [have] standing to bring a claim asserting a violation of someone else's rights." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1050 (9th Cir. 2009) (citation omitted). "Claims premised on the government's treatment of a third-party must satisfy the stringent constitutional standing requirements." *Shanks v. Dressel*, 540 F.3d 1082, 1090 n.9 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992) ("When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed [to establish causation and redressability].")). In *United States v. Flores-Villar*, 536 F.3d 990 (9th Cir. 2008), we held that the defendant-alien could not raise an equal protection claim, because he lacked standing to pursue rights that belonged to his father. *Id.* at 998. The court stated: "[The father] is not a party, and the record discloses no obstacle that would prevent him from asserting his own constitutional rights." *Id.*

**[10]** Here, as in *Flores-Villar*, there is nothing in the record that indicates that Higa does not have the ability to protect his own interests. *See id.* Therefore, we conclude that Park lacks standing to pursue Higa's constitutional claims.

## IV.   Conclusion

The agency's definition of domicile is reasonable. The BIA's finding that Higa was not domiciled in the United

States, based upon this definition, is supported by substantial evidence. For judicial review, reversal of the BIA's determination is warranted only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Tawdrus v. Ashcroft*, 364 F.3d 1099, 1102 (quoting 8 U.S.C. § 1252(b)(4)). The evidence does not compel such a conclusion. Lastly, Park lacks standing to challenge the agency's definition of "domicile" on due process and equal protection grounds. The petition for review is denied.

**PETITION FOR REVIEW DENIED.**