**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GABRIEL RUIZ-DIAZ; HYUN SOOK
SONG; CINDY LEE MARSH; PETER
GILLETTE; SALECK OULD DAH OULD
SIDINE; PABLO SANDOVAL; YURIY
KASYANOV; LELIA TENREYRO-VIANA;
EDGARDO GASTON ROMERO
LACUESTA; ROSARIO RAZO ROMERO;
YOUN SU NAM; HAROLD MICHAEL
CARL LAPIAN; LAND OF MEDICINE;
UKRAINIAN AUTOCEPHALOUS
ORTHODOX CHURCH; SEATTLE
MENNONITE CHURCH,
        *Plaintiffs-Appellees,*

           v.

UNITED STATES OF AMERICA; UNITED
STATES CITIZENSHIP AND
IMMIGRATION SERVICES; UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES
DEPARTMENT OF JUSTICE; MICHAEL
AYTES, Acting Deputy Director of
Citizenship and Immigration
Services; JANET NAPOLITANO,
Secretary of Department of
Homeland Security; ERIC H.
HOLDER, Jr., Attorney General,
Attorney General,
        *Defendants-Appellants.*

No. 09-35734

D.C. No.
2:07-cv-01881-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, Chief District Judge, Presiding

12509

Argued and Submitted
July 12, 2010—Seattle, Washington

Filed August 20, 2010

Before: Pamela Ann Rymer and N. Randy Smith,
Circuit Judges, and Donald E. Walter, Senior District Judge.*

Opinion by Judge Rymer

*The Honorable Donald E. Walter, Senior United States District Judge
for Western Louisiana, sitting by designation.

## COUNSEL

Melissa S. Leibman, U.S. Department of Justice, Office of Immigration Litigation, Washington, D.C., for the defendants-appellants.

Robert Pauw, Gibbs Houston Pauw, Seattle, Washington, for the plaintiffs-appellees.

**OPINION**

RYMER, Circuit Judge:

We must decide whether a regulation providing that alien beneficiaries of special immigrant religious worker visa petitions may file an application for adjustment of status only when their visa petition has been approved, 8 C.F.R. § 245.2(a)(2)(i)(B), is a permissible construction of 8 U.S.C. § 1255(a).[1] Section 1255(a) provides that the status of an alien who has been inspected and admitted or paroled into the United States may be adjusted by the Attorney General[2] if the alien makes an application, is eligible to receive an immigrant visa, and an immigrant visa is immediately available when he applies.

Gabriel Ruiz-Diaz represents a class of alien beneficiaries of special immigrant religious worker visa petitions, and organizations that employ religious workers, who maintain that the regulation is invalid under the statute. The district court agreed, granting summary judgment for Ruiz-Diaz. It reasoned that in § 1255(a), Congress clearly determined which aliens are eligible to apply for adjustment of status — those who are "inspected and admitted or paroled" — and the regulation prevents otherwise eligible aliens from submitting an application because they don't meet a requirement that is not in the statute: having an approved visa petition. The court also rejected the government's position that § 245.2(a)(2)(i)(B) simply regulates the application process under § 1255(a)(1), holding instead that the regulation unreasonably interprets

---

[1] By contrast, the regulation permits alien beneficiaries of family and higher preference employment-based petitions to file an application to adjust status concurrently with their visa petition.

[2] In May 2006, the Attorney General transferred authority over adjustment of status applications for arriving aliens to the Department of Homeland Security (DHS). *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1) (2006). In general, we refer to the Attorney General because it was he who promulgated the regulation.

"immediately available" as meaning two different things — that a visa number is available when the application is filed (in the case of family and higher preference employment-based beneficiaries), and that an alien must be eligible for immediate assignment of a visa number, i.e., the petition has already been approved (in the case of special immigrant employment-based beneficiaries). Accordingly, after granting summary judgment for Ruiz-Diaz and declaring the bar against concurrent filings in 8 C.F.R. § 245.2(a)(2)(i)(B) invalid, the court issued a permanent injunction requiring the government to accept as properly filed adjustment of status applications for religious workers filed concurrently with visa petitions. The government appealed.

Applying *Chevron*'s two-step analysis,[3] we conclude that the statute is silent on the timing of visa petitions and applications for adjustment of status. Congress conferred discretion on the Attorney General to devise regulations to implement § 1255(a), and we cannot say that the agency's interpretation in 8 C.F.R. § 245.2(a)(2)(i)(B) is arbitrary, capricious, or manifestly contrary to the statute. This being so, we reverse the judgment and vacate the injunction. However, other claims that were mooted by the district court's ruling now present a live controversy, so we remand for further proceedings.[4]

I

Up to 5000 special immigrant visas may be granted to religious workers each year.[5] 8 U.S.C. § 1153(b)(4); 8 U.S.C.

---

[3]*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[4]Ruiz-Diaz also asserted claims that the regulation violated the Due Process and the Equal Protection Clauses, the First Amendment, and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq*.

[5]In addition to religious workers, special immigrant visas are made available to a number of different types of employment-based immigrants, described in 8 U.S.C. § 1101(a)(27), in an amount not to exceed 7.1 percent of the yearly worldwide limit of employment-based immigrant visas. 8 U.S.C. § 1153(b)(4).

§ 1101(a)(27)(C). This type of special immigrant visa is for ministers, religious workers in a professional capacity in a religious vocation or occupation, and religious workers in a religious vocation or occupation as defined in § 1101(a)(27)(C). A person seeking a special immigrant religious worker visa may be overseas or in the United States. Many such individuals who are already present in this country are on a non-immigrant visa (R-1 visa). 8 U.S.C. § 1101(a)(15)(R); 8 C.F.R. § 214.2(r). As with all non-immigrant visas, the R-1 is issued for a definite duration; a non-immigrant religious worker who holds an R-1 visa may stay for a maximum of five years. 8 U.S.C. § 1101(a)(15)(R)(ii); 8 C.F.R. § 214.2(r)(4)-(6). The alien must depart when the five-year period has expired, unless he has sought to adjust status prior to the R-1 visa's expiration.[6] If he does none of these things, the alien's status will be unlawful and he may begin to accrue an unlawful presence. *See* 8 U.S.C. § 1255(k). If the alien accrues a period of unlawful presence of more than 180 days, he will be statutorily ineligible for adjustment of status and United States Citizenship and Immigration Services will deny his application. 8 U.S.C. § 1255(c), (k).

A religious organization employer sets the process of obtaining a special immigrant religious worker visa in motion by filing a Form I-360 Petition for Special Immigrant.[7] To qualify, religious workers must have been engaged in the work for which they are applying for at least two years prior to filing the petition. 8 U.S.C. § 1101(a)(27)(C)(iii). The petition is the alien's opportunity to show that he or she may be classified in one of the family or employment preference cate-

---

[6]An alien who leaves the United States may apply for a different non-immigrant visa or an immigrant visa from abroad.

[7]Aliens applying based on family relationships file a Petition for Alien Relative (Form I-130), and applicants applying based on employment in the first three employment-based preference categories file a Petition for Alien Worker (Form I-140).

gories identified in § 1153. *Kyung Park v. Holder*, 572 F.3d 619, 622 (9th Cir. 2009). All special immigrants, including religious workers, are in the fourth preference employment-based category. *Id.* § 1153(b)(4).

Apart from filing the petition, an alien seeking to adjust status to that of a lawful permanent resident must apply for adjustment of status. This would be on a Form I-485 Application to Register Permanent Residence or Adjust Status. This case involves adjustment of status.

The governing statute is § 1255(a), which allows an alien who has been admitted or paroled into the United States to adjust status in the discretion of the agency, and under regulations the agency may prescribe, if (1) the alien makes an application; (2) the alien is eligible to receive a visa; and (3) a visa is immediately available. In full, § 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). An alien is "eligible to receive an immigrant visa" if he is eligible to be classified for a family or employment-based visa. *See* 8 U.S.C. § 1153. An alien is "admissible to the United States for permanent residence" if he is not inadmissible under the grounds listed in § 1182(a). And an immigrant visa is "immediately available" if the priority

date for the preference category is current according to the United States Department of State Visa Bulletin issued for the month in which the application for adjustment of status is filed. 8 C.F.R. §§ 245.1(g)(1), 245.2(a)(2)(i)(B). The priority date is fixed on the date when an approved visa petition is filed. 8 C.F.R. § 245.1(g)(2).

[1] 8 C.F.R. § 245.2(a)(2)(i)(B) was promulgated on July 31, 2002 as an interim rule to improve efficiency and customer service for certain alien workers filing Form I-140 petitions. Prior to its promulgation, all alien workers were required to obtain approval of the underlying visa petition before applying for adjustment of status.[8] *See Allowing in Certain Circumstances for the Filing of Form I-140 Visa Petition Concurrently with a Form I-485 Application*, 67 Fed. Reg. 49,561, 49,561 (July 31, 2002). The regulation changed that practice for alien workers in the first three employment-based preference categories, allowing them to file a visa petition and application for adjustment of status at the same time; special immigrant visa applicants — including religious workers — may still only file a Form I-485 Application to Adjust Status with an approved Form I-360 Petition for Special Immigrant. In its final form, the regulation provides:

> If, at the time of filing, approval of a visa petition filed for classification under section 201(b)(2)(A)(i),[9]

---

[8]Initially, all aliens seeking adjustment of status were permitted to file the visa petition concurrently with the application for adjustment of status. However, on August 9, 1991, the agency promulgated an interim rule requiring employment-based immigrants to obtain an approved visa petition before applying for adjustment of status. *Adjustment of Status to That of Person Admitted for Permanent Residence*, 56 Fed. Reg. 37,864, 37,864 (Aug. 9, 1991). The rule did not affect immediate relatives and aliens in family-based preference classes filing under §§ 201(b)(2)(A)(i) and 203(a), respectively, who were still permitted to file concurrently. The final rule was issued on October 2, 1991. 56 Fed. Reg. 49,839, 49,839 (Oct. 2, 1991).

[9]INA § 201(b)(2)(A)(i) pertains to immediate relatives (children, spouses and parents) of United States citizens. *See* 8 U.S.C. § 1151(b)(2)(A)(i).

section 203(a)[10] or section 203(b)(1), (2), or (3)[11] of the Act would make a visa immediately available to the alien beneficiary, the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the visa petition, provided that it meets the filing requirements contained in parts 103 and 245. For any other classification, the alien beneficiary may file the adjustment application only after the Service has approved the visa petition.

8 C.F.R. § 245.2(a)(2)(i)(B) (footnotes added).

## II

**[2]** We review whether the regulation conflicts with the statute under the two-part test set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under step one, we ask whether Congress has spoken to the question. If Congress has done so unambiguously, we accept its statement as controlling. But if Congress has not spoken to the precise issue because the statute is either silent or ambiguous, we go to step two and consider whether the agency's interpretation is a reasonable, permissible construction of the statute. If it is, we defer to the agency. *Escobar v.*

---

[10]INA § 203(a) provides for other family members such as unmarried sons and daughters of a United States citizen over the age of 21, spouses and unmarried sons and daughters of legal permanent residents, married sons and daughters of United States citizens, and brothers and sisters of United States citizens. *See* 8 U.S.C. § 1153(a).

[11]INA § 203(b)(1) applies to immigrants with extraordinary ability, outstanding professors and researchers, and certain multinational executives and managers. *See* 8 U.S.C. § 1153(b)(1). Section 203(b)(2) covers immigrants who are members of professions holding advanced degrees or of exceptional ability. *See id.* § 1153(b)(2). Section 203(b)(3) concerns skilled workers, professionals, and other qualified immigrants capable of performing unskilled labor for which qualified workers are not available in the United States. *See id.* § 1153(b)(3).

*Holder*, 567 F.3d 466, 472 (9th Cir. 2009); *Bona v. Gonzales*, 425 F.3d 663, 668 (9th Cir. 2005). When, as here, Congress has expressly conferred authority on the agency to implement a statute by regulation, the regulations have "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44. This is particularly true in the immigration context "for executive officials 'exercise especially sensitive political functions that implicate questions of foreign relations.' " *Negusie v. Holder*, 129 S. Ct. 1159, 1164 (2009) (quoting *INS v. Abudu*, 485 U.S. 94, 100 (1988)).

Ruiz-Diaz submits that Congress intended for § 1255(a) to provide the full eligibility criteria for filing an application for adjustment of status, and that the regulation contravenes this intent by redefining who is eligible to apply. As he points out, we held in *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005), that § 1255(a) unambiguously defines who is eligible — those who have been "admitted or paroled" into the country — and that a regulation which deemed a paroled alien an "arriving alien" regardless of his parole status was invalid. *Id.* at 667-70. However, a similar question is not presented here. Unlike the regulation at issue in *Bona*, § 245.2(a)(2)(i)(B) does not affect who is eligible to apply. Any alien "admitted or paroled" into the United States may apply for adjustment if he is eligible to be classified for a visa and a visa number is current when his application is filed. Thus, the statutory criteria for eligibility are intact.

**[3]** For this reason, we disagree with the district court that the statute clearly speaks to the precise issue presented. Rather, we conclude at *Chevron* step one that the statute is silent with respect to when visa petitions and applications for adjustment of status may be accepted and processed in relation to each other. It says nothing at all about whether they must, or may, be filed concurrently or consecutively, or in what order.

Given congressional silence on the issue of timing, we must decide at *Chevron* step two whether the agency's approach is a permissible construction of the statute. In this connection, we note that § 1255(a) confers discretion on the Attorney General to adjust status "under such regulations he may prescribe." Thus, Congress expressly manifested its intent that the agency regulate the process by which status will be adjusted except for three statutory prerequisites: (1) the alien must make an application; (2) the alien must be eligible to receive an immigrant visa and be admissible; and (3) an immigrant visa must be immediately available to the alien at the time he applies. As the Court stated in *Chevron*, "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." 467 U.S. at 844. Thus, we must determine not how we would interpret the statute, but whether the agency's interpretation is reasonable.

**[4]** Ruiz-Diaz and the district court posit that it is unreasonable for the agency to interpret the same words in the third condition — that an immigrant visa be "immediately available" — differently depending upon the class of worker. In their view, the agency impermissibly interpreted this phrase on the one hand to mean that higher preference workers who do not have an approved visa petition may file for adjustment of status, and on the other hand to mean that religious workers who do not have an approved visa petition may not file for adjustment of status. However, with regard to question before us — whether the agency impermissibly requires alien beneficiaries of special immigrant visa petitions to apply for adjustment of status only after their visa petition is approved — we conclude that the agency's interpretation of the statute is reasonable. Section 1255(a)(3) does not prohibit consecutive filing. Beyond this, the agency has already construed the term "immediately available" in 8 C.F.R. § 245.1(g)(1), which defines the term to mean that the immigrant's priority date for a visa number is current. An application to adjust status may be accepted for filing and processing if the applicant's place

on the waiting list is earlier than the date shown in the State Department's Visa Bulletin. *Id.* For applicants with previously approved visa petitions, their place in the queue is apparent at the time of filing. It is not manifestly contrary to the statute for the agency to accept the applications of alien beneficiaries of special immigrant religious worker visas for filing and processing only when they have a visa in hand, thus making it obvious that the visa number is "immediately available."

Ruiz-Diaz's real concern is that USCIS does not process the petition for a special immigrant religious worker visa soon enough for it to do many of them any good. It takes time for visa petitions to work their way through the system; the government estimates five-six months on average, though in individuals cases it may take longer. From Ruiz-Diaz's perspective the problem is compounded for those religious workers who are present in the country on R-1 non-immigrant visas, because they do not get the benefit of a stay that comes with filing an application for adjustment of status, 8 U.S.C. § 1255(k), and must depart the country when their R-1 visas expire. It is this conundrum that led Ruiz-Diaz to challenge the regulation.

**[5]** He claims that religious workers such as he who are eligible to apply for adjustment of status will accrue more than 180 days of unlawful presence while waiting for their visa petitions to be approved. As a practical matter, Ruiz-Diaz contends, the effect is to disable these particular alien beneficiaries from adjustment of status even though they are otherwise eligible under the statute. To Ruiz-Diaz delay is in effect denial. Therefore, he maintains, it is not permissible for the agency to deny applications in this manner. Unfortunate though this consequence may be for the individuals involved, § 1255(a) does not address the speed with which the agency must process petitions. We cannot say that it is unreasonable for the agency to determine that visa petitions for alien beneficiaries of special immigrant religious worker visas must be

approved before an application for adjustment of status may be filed and processed.

The parties make additional arguments in support of their positions that we decline to reach. For example, the government suggests that its regulation is justified to reduce fraud in the Special Immigrant Religious Worker Visa Program, and Ruiz-Diaz contends that the regulation offends the Equal Protection Clause and the Religious Freedom Restoration Act. The district court did not consider these claims because its disposition effectively mooted them. Our disposition, however, revives them. We express no opinion on their merits, which we leave to the district court in the first instance.

Having decided that the regulation withstands *Chevron* review, we reverse the judgment and vacate the injunction. We remand for such other proceedings as the district court deems appropriate.

REVERSED AND REMANDED.