**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANUEL CAMPOS-HERNANDEZ, *Petitioner*, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, *Respondent*. | No. 14-70034 <br><br> Agency No. A094-199-373 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 15, 2018
Pasadena, California

Filed May 2, 2018

Before: Marsha S. Berzon and Jay S. Bybee, Circuit
Judges, and Sharon L. Gleason,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Sharon L. Gleason, United States District Judge for
the District of Alaska, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Manuel Campos-Hernandez's petition for review of a decision of the Board of Immigration Appeals, concluding that he was ineligible for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA).

To be eligible for cancellation of removal under NACARA, an applicant who is inadmissible on certain criminal grounds, like Campos-Hernandez, is subject to a heightened physical presence requirement such that he must establish that he "has been physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for removal." NACARA § 203(b); 8 C.F.R. § 1240.66(c)(2). The BIA concluded that Campos-Hernandez's 2008 conviction was a ground of removal, and because ten years had not elapsed between 2008 and the decision of the BIA, he was not eligible for cancellation of removal under NACARA.

After briefing in this appeal, the BIA held, in *Matter of Castro-Lopez*, 26 I. & N. Dec. 693 (BIA 2015), a precedential opinion in a different immigration appeal, that continuous presence for cancellation of removal under NACARA "should be measured from the alien's most recently incurred ground of removal."

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The question before the panel in Campos-Hernandez's case was which act or status constituting a ground for removal—the first, last, or any other—starts the clock for the ten-year "heightened" physical presence requirement.

The panel first determined that, under *Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), the panel was not bound by this court's contrary interpretation of identical language in the now-superseded suspension of deportation statute in *Fong v. INS*, 308 F.2d 191 (9th Cir. 1962), concluding that *Fong* did not hold that a contrary interpretation was foreclosed.

Second, the panel deferred to *Matter of Castro-Lopez*. As a preliminary matter, the panel concluded that *Matter of Castro-Lopez* involved the interpretation of a statute, not a regulation, because the regulation copies verbatim the relevant statutory text from NACARA. The panel also determined that NACARA § 203(b) was silent or ambiguous with respect to the issue here. Further, the panel concluded that the BIA's interpretation was reasonable, noting that the use of indefinite articles in NACARA § 203(b)—(*i.e.*, "*an* act," "*a* status," as opposed to "*the* act," "*the* status") grants the words an indefinite or generalizing force. Thus, the panel concluded that it is reasonable to interpret the requisite ten-year period to immediately follow *each* disqualifying act or status, rather than to follow a single particularized act or status—the first one, as Campos-Hernandez would read the statute.

The panel also observed that reading the continuous physical presence requirement to run from the last act or status, rather than the first, avoids consequences that would frustrate the evident policy behind the requirement; under the

opposite reading, individuals most likely to continue committing crimes, as evidenced by their very recent behavior, would be eligible to stay in the country, but individuals who had not committed any crime for eight or nine years would not.

## COUNSEL

Louis A. Gordon (argued), Law Offices of Louis A. Gordon, Los Angeles, California; Edgardo Quintanilla, Quintanilla Law Firm ALC, Sherman Oaks, California; for Petitioner.

Kohsei Ugumori (argued), Senior Litigation Counsel; Emily Anne Radford, Assistant Director; Joyce R. Branda, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

BERZON, Circuit Judge:

To qualify for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA),[1] an undocumented immigrant must show he has been "physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for removal." NACARA § 203(b); *see* 8 C.F.R. § 1240.66(c)(2). When Manuel Campos-Hernandez applied for NACARA special rule cancellation, the BIA interpreted the physical presence requirement as running from Campos-Hernandez's most recent disqualifying conviction, rather than his earliest, and so held him ineligible for NACARA cancellation of removal. We conclude that the BIA's interpretation of NACARA is reasonable and is therefore entitled to deference. Accordingly, we deny the petition.

## I

Campos-Hernandez, a citizen and native of El Salvador, entered the United States in 1990 or 1991 without being admitted or paroled after inspection by an immigration officer. He is 41 years old and married to a U.S. citizen. Since 2009, he has worked as a mechanic. Campos-Hernandez was convicted of drug-related offenses in California in 2003, 2005, and 2008.

---

[1] Pub. L. No. 105-100, § 203, 111 Stat. 2160, 2196–2201 (1997).

In 2008, the Department of Homeland Security (DHS) served Campos-Hernandez with a Notice to Appear (NTA) at a removal hearing. The NTA alleged that Campos-Hernandez arrived in the United States without being admitted or paroled after inspection, and charged him with removability both on that basis and on the basis of his drug convictions.[2] Campos-Hernandez admitted the allegations against him and conceded his removability.

On February 10, 2012, Campos-Hernandez filed a NACARA application. That same day, an immigration judge (IJ) found that Campos-Hernandez was ineligible for NACARA special rule cancellation of removal and denied his application for relief. Specifically, the IJ determined that, because the drug convictions rendering him inadmissible occurred within the previous ten years, Campos-Hernandez could not satisfy NACARA's requirement of "10 years [of continuous physical presence] immediately following the commission of an act, or the assumption of a status constituting a ground for removal." 8 C.F.R. § 1240.66(c)(2).

The BIA dismissed Campos-Hernandez's appeal in a non-precedential, single-member opinion. The opinion held that Campos-Hernandez's 2008 conviction was "a ground for removal" under 8 C.F.R. § 1240.66(c)(2), and because ten years had not elapsed between 2008 and the decision of the BIA, he was not eligible for cancellation of removal under

---

[2] *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."); *id.* § 1182(a)(2)(A)(i)(II) ("[A]ny alien convicted of . . . a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is inadmissible.").

NACARA. Campos-Hernandez timely filed a petition for review.

After the briefing of this appeal, a three-member panel of the BIA held, in a precedential opinion in a different immigration appeal, that "for purposes of special rule cancellation of removal under the NACARA, . . . continuous physical presence should be measured from the alien's *most recently incurred* ground of removal." *Matter of Castro-Lopez*, 26 I. & N. Dec. 693, 696 (BIA 2015) (emphasis added). We ordered the parties to submit supplement briefing addressing *Matter of Castro-Lopez*, and they did so.

## II

### A. Applicable law

NACARA was enacted in 1997 to provide immigration benefits to nationals from certain Central American and Eastern European countries, including El Salvador. *See* NACARA § 203(b);[3] 8 C.F.R. § 1240.61(a); *Barrios v. Holder*, 581 F.3d 849, 857 (9th Cir. 2009). In particular, "[s]ection 203 of NACARA allows qualified individuals to apply for special rule cancellation under the more lenient standards that existed before the passage of [IIRIRA]." *Barrios*, 581 F.3d at 857.

---

[3] NACARA amended the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009. IIRIRA had changed the terms previously used in immigration statutes, replacing "deportation" with "removal" and the concomitant remedy of "suspension of deportation" with "cancellation of removal." *Ram v. INS*, 243 F.3d 510, 513 (9th Cir. 2001).

Most applicants for cancellation of removal under
NACARA must establish physical presence in the United
States for "a continuous period of 7 years immediately
preceding" the filing of an application for cancellation of
removal. NACARA § 203(b); 8 C.F.R. § 1240.66(b)(2). An
applicant for cancellation of removal under NACARA who
is inadmissible under 8 U.S.C. § 1182(a)(2),[4] however, is
subject to a heightened physical presence requirement. Such
an applicant, like Campos-Hernandez, must establish that he
"has been physically present in the United States for a
continuous period of not less than 10 years immediately
following the commission of an act, or the assumption of a
status, constituting a ground for removal." NACARA
§ 203(b); 8 C.F.R. § 1240.66(c)(2).

"Agency regulations interpreting special rule
cancellation"—particularly the continuous physical presence
requirements—"closely track the text of . . . NACARA."
*Barrios*, 581 F.3d at 857; *see* 8 C.F.R. § 1240.66(b)(2), (c)(2).
In turn, the language of NACARA's continuous physical
presence requirements—both the "heightened" ten-year
requirement and the regular seven-year one—is copied from
an older statute governing suspension of deportation, a now-
superseded form of immigration relief.[5] *See* 8 U.S.C. § 1254

---

[4] As relevant here, that provision covers an applicant who has been
convicted of "a violation of . . . any law or regulation of a State, the
United States, or a foreign country relating to a controlled substance."
8 U.S.C. § 1182(a)(2)(A)(i)(II). This heightened requirement also applies
to persons deportable under other provisions of the INA not pertinent here.

[5] The statutory language governing the continuous physical presence
requirement dates back to at least the 1950s. *See* Immigration and
Nationality Act of 1952, Pub. L. No. 82-414, § 244(a)(5), 66 Stat. 163,
214–16 (codified at 8 U.S.C. § 1254(a)(5) (1952) (repealed) (entitling a

(1996) (repealed); *Fong v. INS*, 308 F.2d 191 (9th Cir. 1962) (construing identical language from the now-superseded suspension of deportation statute).

An agency's formal interpretation of its governing statutes may be entitled, when appropriate, to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Chevron* deference is appropriate when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and . . . the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); *see Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc). When applying *Chevron*, a court "is confronted with two questions. First . . . is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 842. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. An agency's interpretation that conflicts with earlier binding authority of this court is entitled to deference unless the court's earlier interpretation "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005); *see also Garfias-Rodriguez v. Holder*, 702 F.3d 504, 512–13 (9th Cir. 2012) (en banc).

---

person to apply for suspension of deportation if, among other things, he "has been physically present in the United states for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation").

### B.  Discussion

#### 1.  Conflicting authority and *Brand X*

Before determining whether the BIA's interpretation in *Matter of Castro-Lopez* merits deference, we confront a threshold issue: whether we are bound by our contrary interpretation of the now-superseded suspension of deportation statute. *See Fong*, 308 F.2d 191. *Fong* addressed a continuous physical presence provision identical to the one we here examine.

In *Fong*, Louie King Fong's eligibility for suspension of deportation hinged, as does Campos-Hernandez's, on whether the ten-year physical presence requirement ran from when he first became deportable in 1944, or from the last act or status making him deportable, which occurred in 1953. *Id.* at 193. If the former, Fong "ha[d] been physically present in the United States for a continuous period of not less than ten years immediately following . . . the assumption of a status . . . constituting a ground for deportation." *Id.* at 194 (quoting 8 U.S.C. § 1254(a) (1952)). If the latter, he had not. Finding the provision "open to two possible constructions," *id.*, the court likened the provision to a penal statute, and resolved the ambiguity by strictly construing the statute in favor of Fong. *Id.* at 194–95 (citing *Barber v. Gonzales*, 347 U.S. 637, 642–43 (1954)). Accordingly, the court held that Fong's residence in the United States, dating from his *first* deportable act or status in 1944, satisfied the ten-year continuous physical presence requirement, notwithstanding his later-incurred grounds for deportation. *Id.* at 195–96.

NACARA—the statute we address today—is not the same suspension of deportation statute construed in *Fong*. In

enacting NACARA, however, Congress purposely used language identical to that in the suspension of deportation statute, as it intended to preserve the remedy from that statute for NACARA beneficiaries. *See Munoz v. Ashcroft*, 339 F.3d 950, 955 (9th Cir. 2003). For that reason, our interpretation of the provision in *Fong* would arguably still bind us, notwithstanding the formal non-identity of the two statutes, but for the BIA's recent precedential interpretation of the provision in *Matter of Castro-Lopez*.

*Fong* does not, however, prevent us from deferring to *Matter of Castro-Lopez*. "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Brand X*, 545 U.S. at 982–83. *Fong* expressly determined that the ten-year physical presence requirement was "open to two possible constructions." *Fong*, 308 F.2d at 194; *see id.* at 195–96 ("[W]e will not assume that Congress meant to trench on [Fong's] freedom beyond that which is required by the narrowest of *several possible meanings* of the words used.") (emphasis added) (quoting *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)). As *Fong* did not hold that the Immigration and Nationality Act "unambiguously foreclose[d]" a contrary interpretation, our decision in that case may not "displace[] a conflicting agency construction" otherwise entitled to deference. *Brand X*, 545 U.S. at 983.

### 2. *Matter of Castro-Lopez*

We next determine whether the BIA's interpretation of the ten-year continuous physical presence requirement in *Matter of Castro-Lopez* is entitled to deference.

As a preliminary matter, we conclude that *Matter of Castro-Lopez* involved the interpretation of a statute, not a regulation. In *Matter of Castro-Lopez*, the BIA said that it was interpreting 8 C.F.R. § 1240.66(c)(2), a regulation implementing NACARA § 203(b), rather than § 203(b) itself. *See* 26 I. & N. Dec. at 696 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). In general, an agency's interpretation of its own ambiguous regulation is subject to "*Auer* deference." *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 828–29 (9th Cir. 2012) (en banc). When, however, "the underlying regulation at issue [does] 'little more than restate the terms of the statute itself[,]' . . . the question [is] really one of *statutory* interpretation." *Id.* at 829 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006)).

The language of 8 C.F.R. § 1240.66(c)(2) copies verbatim the relevant statutory text of NACARA § 203(b).**[6]** Rather than specifying whether the ten-year period begins with the first qualifying act or status or the last one, the regulation "incorporates the very [gap] . . . the [agency] seeks to clarify." *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 394 (9th Cir. 2011).

The language of § 1240.66(c)(2) thus "comes [directly] from Congress, not the Attorney General," so "the question . . . is not the meaning of the regulation but the meaning of the statute." *Gonzales*, 546 U.S. at 257. The regulation's "parroting" of the statute, *id.*, is all the more conspicuous

---

**[6]** *Compare* NACARA § 203(b) ("[T]he alien . . . has been physically present in the United States for a continuous period of not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for removal"), *with* 8 C.F.R. § 1240.66(c)(2) (same, less one comma).

given that NACARA § 203(b) itself borrowed the precise language from statutes dating back at least to 1952. *See* 8 U.S.C. § 1254(a) (1952) (repealed). Accordingly, we assess whether *Matter of Castro-Lopez* is a permissible interpretation of the statutory text of NACARA § 203(b), rather than the regulatory text of 8 C.F.R. § 1240.66(c)(2).

The BIA's interpretation of the ten-year physical presence requirement in *Matter of Castro-Lopez* merits deference under *Chevron*. First, as noted above, § 203(b) of NACARA is "silent or ambiguous with respect to" the issue presented here: which act or status constituting a ground for removal—the first, last, or any other—starts the clock for the ten-year "heightened" physical presence requirement. *Anaya-Ortiz v. Holder*, 594 F.3d 673, 677 (9th Cir. 2010) (quoting *Chevron*, 467 U.S. at 842).[7]

Next, *Matter of Castro-Lopez* is a "published BIA case" that constitutes "binding agency precedent on-point" that fills the interpretive gap. *See id.* (quoting *Park v. Holder*, 572 F.3d 619, 623–24 (9th Cir.2009)); *Matter of Castro-Lopez*, 26 I. & N. Dec. at 696.

Finally, the BIA's interpretation of the ten-year physical presence requirement is reasonable. *See Garfias-Rodriguez*, 702 F.3d at 513. The statute requires ten years' continuous physical presence immediately following "the commission of

---

[7] *See Fong*, 308 F.2d at 194; *Gagliano v. INS*, 353 F.2d 922, 929 (2d Cir. 1965) (concluding that the continuous physical presence requirement was "somewhat ambiguous" and "allow[ed] for two possible constructions"); *Matter of Castro-Lopez*, 26 I. & N. Dec. at 694 ("[W]e find [the language] to be ambiguous. It does not address the situation where there is more than one act or event that renders an alien removable, as is the case with the respondent.").

*an* act, or the assumption of *a* status, constituting a ground for removal," NACARA § 203(b) (emphasis added), not "*the* act," or "*the* status," that constitutes a ground for removal. The indefinite article grants the words "act" and "status" an "indefinite or generalizing force," rather than "particulariz[ing]" them, *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012), as use of the definite article would have, to denote a specific act or status constituting a ground for removal. *See also* Black's Law Dictionary 1 (6th ed. 1990) ("The article 'a' is not necessarily a singular term; it is often used in the sense of 'any' . . . ."). It is thus reasonable to interpret the requisite ten-year period to immediately follow *each* disqualifying act or status, rather than to follow a single particularized act or status—the first one, as Campos-Hernandez would read the statute.

Reading the continuous physical presence requirement to run from the last act or status, rather than the first, avoids consequences that would frustrate the evident policy behind the requirement. For example, under the opposite reading, an applicant who was convicted of a drug offense in 2000, but not again until 2010, could thereafter accumulate any number of disqualifying convictions and statuses while still remaining eligible for cancellation of removal under NACARA. The ten-year crime-free requirement would then serve a perverse purpose, as the individuals most likely to continue committing crimes, as evidenced by their very recent behavior, would be eligible to stay in the country, but individuals who had not committed any crime for eight or nine years would not. Such a result would severely undermine the "testing" or "qualifying" role of the physical presence provision. *Patsis v. INS*, 337 F.2d 733, 740 (8th Cir. 1964) (Blackmun, J.); *Matter of V-R-*, 9 I. & N. Dec. 340, 344

(BIA 1961), *rule reinstated by Matter of Wong*, 13 I. & N. Dec. 427 (BIA 1969).

Bolstering our conclusion, several circuits (and the BIA) have interpreted the same phrase in the suspension of deportation statute, 8 U.S.C. § 1254(a) (1952) (repealed), to date from the *last* deportable offense or status. *See, e.g.*, *Patsis*, 337 F.2d at 740–42; *Matter of Wong*, 13 I. & N. Dec. at 430.[8] *Fong* itself recognized that the BIA's construction of the phrase "might find support in logic," 308 F.2d at 195, even though it ultimately resolved the ambiguity in favor of the petitioner.

We are mindful that NACARA was enacted to help people "who had taken unusual risks in escaping from oppressive governments," and those "whose countries had been profoundly ravaged by war." *Ram v. INS*, 243 F.3d 510, 517 (9th Cir. 2001). But NACARA's humanitarian purpose does not override the BIA's authority to interpret ambiguous provisions of the statutes that govern it. The reasonableness of the BIA's interpretation, along with the weight of authority supporting it, compel the conclusion that the BIA's interpretation is not "arbitrary, capricious, or manifestly contrary to the statute." *Garcia v. Holder*, 659 F.3d 1261, 1266 (9th Cir. 2011) (quoting *Chevron*, 467 U.S. at 844).

---

[8] *See also Gagliano*, 353 F.2d at 929 (following *Patsis*); *Bello v. Gonzales*, 152 F. App'x 146, 148 (3d Cir. 2005) (precedential but not selected for publication) ("This Court has previously indicated, in accordance with . . . the INS and the majority of courts to address the issue, that the period of physical presence commences on the date of the most recent acts constituting grounds for deportation."); Richard D. Steel, *Steel on Immigration Law* § 14:29 (2017) ("If more than one ground of deportability is alleged, the ten years only begins to run from the last event that gave rise to a ground of deportability.").

We therefore defer to *Matter of Castro-Lopez*'s interpretation of NACARA § 203(b) as requiring that the ten-year continuous physical presence requirement for NACARA applicants run from the most recent "commission of an act, or . . . assumption of a status, constituting a ground for removal." Campos-Hernandez was convicted of a drug-related offense in June 2008, rendering him inadmissible under § 212(a)(2) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II). Because he cannot establish that he has been "physically present in the United States for . . . not less than 10 years immediately following the commission of an act, or the assumption of a status, constituting a ground for removal," he is not eligible for special rule cancellation of removal under NACARA.

The petition is **DENIED.**