In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1279

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES OWENS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-164—**Larry J. McKinney**, *Judge.*

ARGUED OCTOBER 7, 2009—DECIDED NOVEMBER 6, 2009

Before RIPPLE, KANNE, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. James Owens pled guilty to transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Owens's plea agreement included a stipulation of the sentencing guidelines offense level calculation, including all aggravating and mitigating sentencing factors, except for one enhancement. The parties could

not agree on the applicability of U.S.S.G. § 2G2.2(b)(3)(B), which comes into play when a defendant expects to receive a thing of value in exchange for his distribution of child pornography. Owens maintains that he should receive only a two-level enhancement because he did not expect to receive anything of value, and even if he did have an expectation, that expectation was of "role play" and not of a sexual encounter. The government maintains that Owens did expect to receive a sexual encounter, and accordingly, the five-level enhancement was appropriate. The district court agreed with the government and sentenced Owens to a term of 360 months' imprisonment. Owens appealed the enhancement to his sentence, and we now affirm.

## I. Background

Owens frequented an internet chat site known as "Incest Taboo Forum.com." In July 2008, Owens began a discussion with "Erica," a divorced mother of an eight-year-old girl and a twelve-year-old boy. Unbeknownst to Owens, Erica was actually Detective Dan Claasen of the Fishers, Indiana Police Department, who was investigating online offenses against children.[1]

After Owens sent Erica an introductory message, he did not contact her again until August 2008. During this chat session, Erica disclosed that she had been mo-

---

[1] For purposes of continuity and readability, throughout this opinion we will refer to "Erica" as if she were a real person.

lested by her stepfather as a child. Owens admitted to having a sexual relationship with a close female relative, beginning when the girl was twelve and continuing until she was seventeen. The two also discussed whether Erica was "active" with her children and Owens's preference for children between the ages of eight and thirteen. Saving the graphic details, this discussion culminated in Owens expressing his goal of establishing a sexual relationship with Erica and her children.

In a third chat session a few days later, Owens offered to send Erica a child pornography video called "littlegirlsmix" in an effort to stimulate role play between him and Erica. Erica accepted the offer and Owens then transferred the video, along with his graphic description of its contents. After a brief role play discussion, Owens and Erica agreed to meet in person the following day at a coffee shop in Fishers, Indiana. In planning the meeting, Owens asked Erica how her kids would react to his introduction into the family. He explained, "we you and I have lived it the kids haven't yet." (App. at 12.) Erica replied, "that's why I see it as more of a journey, how a family lives instead of little individual times when something may happen." (*Id.*) Owens then said, "the question is how are we gonna live do we start as nudist at home to get them used to the idea or how do we introduce them to it." (*Id.*) Erica responded, "oh yes, I am very open about my sexuality and am not embarrassed with nudity." (*Id.*) The two then made final arrangements to meet the following day.

Police arrested Owens when he arrived the next day at the coffee shop. He made a Mirandized statement admitting to his illegal transfer of the video to Erica. He also admitted to having molested his female relative when she was a child, a fact later confirmed by investigating officers. When Owens consented to a search of his vehicle, two more child pornography videos were discovered. A subsequent search of Owens's home led to the recovery of additional child pornography videos. The videos recovered in Owens's car and home formed the basis for the second count in the indictment, possession of child pornography.

The sole question in this case is whether Owens expected to receive a thing of value in exchange for his transmission of child pornography. The answer to this question determines whether Owens receives a five-level or a two-level sentencing enhancement, and consequently, whether the applicable guidelines range is reduced from between 360 months, and life imprisonment to between 262 and 327 months' imprisonment.

## II. Analysis

The starting point of our analysis is the statute itself, U.S.S.G. § 2G2.2(b)(3), which provides:

  (b) Specific Offense Characteristics . . .

    (3) (Apply the greatest) If the offense involved: . . .

        (B) Distribution for the receipt, or expectation of receipt, of a thing of

> value, but not for pecuniary gain, increase by 5 levels. . . .
>
> (F) Distribution other than distribution described in subdivisions (A) through (E), increase by 2 levels.

Case law has resolved many of the questions raised by this statutory language. For example, in *United States v. Whited*, the Seventh Circuit held that sexual contact can be considered a thing of value under the statute. 539 F.3d 693, 698-99 (7th Cir. 2008). The *Whited* court also held that "expectation of receipt" does not require an explicit agreement or precise bargain. *Id.* at 699. Rather, reasonable anticipation or reasonable belief is enough to trigger the enhancement. *Id.*

In light of *Whited*, the sole question in this case can be answered by resolving whether Owens had a reasonable expectation of receipt of a thing of value, and, if so, whether that reasonable expectation was of role play or of a sexual encounter. The district court found that Owens reasonably expected receipt of a sexual encounter, and we review that sentencing decision *de novo* as to questions of law and for clear error as to factual findings and the application of the guidelines. *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007).

In this case, Owens argues that he did not actually expect a sexual encounter; rather, he merely "hoped" that his conversations with Erica would lead to a sexual relationship. But, as we noted in *Whited*, "'expectation

of receipt' under § 2G2.2(b)(3)(B) does not require an explicit agreement or precise bargain. . . . Distribution of child pornography in the reasonable anticipation or reasonable belief of receiving a thing of value is enough for the enhancement to apply." 539 F.3d at 699. Although Owens did not have an explicit agreement or precise bargain with Erica, the content of his conversations lead us to the conclusion that Owens reasonably anticipated or believed that his exchange of child pornography would result in a sexual encounter with Erica and her children. This conclusion results from Owens's own statement about enjoying "moms with kids, dads with kids and both together"; his confession of a past relationship with a minor; his desire to meet Erica; and his proposals to introduce Erica's children to sexual experiences. Owens clearly anticipated receipt of a sexual encounter, and his transmittal of the pornography only served to further his goal.

But Owens argues that even if we find that he expected to receive something in exchange for his distribution, that expectation was for role play only and, therefore, was not in expectation of a thing of value. To lend credence to his argument, Owens argues that his transmission of pornography occurred during a conversation in which the context was role play, and not an actual sexual encounter. This argument is unavailing for two reasons.

First, although Owens argues that he expected only role play, his own conversations demonstrate otherwise. During his discussions with Erica, Owens repeatedly stated that he was uninterested in role play because he

"suck[ed] at it." (*See* App. at 7, 9.) And even though Owens engaged in some role play after Erica's numerous prompts, his involvement in the role play was brief and fleeting. Owens's post hoc argument that he was expecting to receive role play in exchange for his transmission of pornography is unpersuasive.

Second, Owens argues that it was impossible for him to expect receipt of a sexual encounter when he sent the video during a conversation about role play and not about sex. As we made clear in *Whited*, however, the transfer of images need not be contemporaneous with the sexual encounter for the defendant to harbor an expectation of sex. In *Whited*, the defendant transmitted "child pornography images to an e-mail correspondent with whom he was trying to arrange a sexual encounter." 539 F.3d at 695. Importantly, the proposed sexual encounter was not contemporaneous with the transmission of the pornography. Instead, the defendant sent the images to his correspondent to satisfy the latter until the sexual encounter could take place. *Id.* at 696. This case is no different. Here, Owens sent Erica images with the end goal of obtaining a sexual relationship with her and her children. Although he did not send the images concurrent with an actual sexual encounter, Owens did send the images with the expectation that this transmission would lead to a future sexual encounter. This is all that is required.

Further supporting our decision is the fact that the statute itself contains no temporal component. There is no requirement in § 2G2.2(b) that the defendant send the

images contemporaneously with receipt of the thing of value. Therefore, the mere fact that Owens expected to receive a thing of value in the future as opposed to immediately upon transmission is of no consequence.

### III. Conclusion

Owens transmitted child pornography with the end goal of receiving a thing of value, namely sex, from the recipient. Because Owens's ultimate goal was a sexual encounter with Erica and her children, and because neither the statute nor our precedent contain a temporal component in conjunction with the transfer, we AFFIRM the sentence.