**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GABRIEL RUIZ-DIAZ; HYUN
SOOK SONG; CINDY LEE
MARSH; PETER GILLETTE;
PABLO SANDOVAL; YURIY
KASYANOV; LELIA
TENREYRO-VIANA; EDGARDO
GASTON ROMERO LACUESTA;
ROSARIO RAZO ROMERO;
YOUN SU NAM; LAND OF
MEDICINE; UKRAINIAN
AUTOCEPHALOUS ORTHODOX
CHURCH; SEATTLE
MENNONITE CHURCH;
SALECK OULD DAH OULD
SIDINE; HAROLD MICHAEL
CARL LAPIAN,
         *Plaintiffs - Appellants*,

v.

UNITED STATES OF AMERICA;
UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES;
UNITED STATES DEPARTMENT
OF HOMELAND SECURITY;
UNITED STATES DEPARTMENT
OF JUSTICE; JANET A.
NAPOLITANO, Secretary of
Department of Homeland

No. 11-35580

D.C. No.
2:07-cv-01881-RSL

ORDER AND
AMENDED OPINION

Security; ERIC H. HOLDER,
JR., Attorney General;
ALEJANDRO MAYORKAS,
Director of Citizenship and
Immigration Services,
        *Defendants - Appellees*.

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
August 27, 2012–Seattle, Washington

Filed October 5, 2012
Amended November 26, 2012

Before: Mary M. Schroeder and Ronald M. Gould, Circuit
Judges, and Jed S. Rakoff, Senior District Judge.[*]

Order;
Opinion by Judge Schroeder

---

[*] The Honorable Jed S. Rakoff, Senior United States District Judge for
the Southern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel affirmed the district court's summary judgment in favor of the government in a class action brought by non-citizen religious workers and organizations that employ them. The panel held that regulation 8 C.F.R. § 245.2(a)(2)(i)(B), under which plaintiff employees cannot file visa applications concurrently with the petitions of their sponsoring employers, does not violate the Religious Freedom Restoration Act, because it does not impose a substantial burden on plaintiffs' religious exercise. The panel held that the regulation does not violate plaintiffs' equal protection rights, because the government established that its concerns about fraud in the religious worker visa program constituted a rational basis to treat religious workers differently from other employment-based visa applicants. The panel also held that even if the regulation makes it more difficult for plaintiffs to obtain adjustment of status, it does not violate due process because there is no legitimate statutory or constitutional claim of entitlement to concurrent filings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Robert Pauw, Seattle, Washington, for plaintiffs-appellants.

Melissa S. Leibman, Department of Justice, Washington, DC, for defendants-appellees.

**ORDER**

The Opinion filed October 5, 2012, is amended as follows: on slip Opinion page 12168, line 10, delete the following text: special immigrant; on slip Opinion page 12168, line 11, delete the following text: Justice Department; and on slip Opinion page 12168, lines 13–14, amend the following text: 18 U.S.C. § 1255(a) to 8 U.S.C. § 1255(a).

**OPINION**

SCHROEDER, Circuit Judge:

Plaintiffs represent a class of non-citizen religious workers, together with the organizations that employ them, who have been admitted to this country on five-year religious worker visas. They challenge a regulation governing the process by which religious workers can apply for adjustment of status pursuant to 8 U.S.C. § 1255(a). Under the regulation, 8 C.F.R. § 245.2(a)(2)(i)(B), such employees are among the categories of applicants for lawful permanent resident ("LPR") status who cannot file their visa applications concurrently with the petitions of their sponsoring employers. The employees must wait for the Citizenship and Immigration Service ("USCIS") to approve their employers' petitions

before they can file applications. The plaintiffs would like to be able to file the employees' applications concurrently with the petitions of the sponsoring employers, as other categories of applicants for LPR status are permitted to do.

The employment-based immigration visa statute, 8 U.S.C. § 1153(b), divides applicants for such visas into categories, four of which are important here. The first-preference category is for "priority" workers, such as professional athletes and professors; the second-preference is for professionals who hold advanced degrees; and the third-preference is for other skilled and unskilled workers. 8 U.S.C. § 1153(b)(1)–(3). The fourth-preference category, into which plaintiffs here fall, are "special immigrants." 8 U.S.C. § 1153(b)(4). This category includes religious workers and other specialized groups, such as certain physicians and international broadcasters. 8 U.S.C. § 1101(a)(27).

The regulation at issue here allows concurrent filing for employees in the first three employment-based immigration categories: "the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the visa petition, provided that it meets the filing requirements." 8 C.F.R. § 245.2(a)(2)(i)(B). The option to file concurrently is not extended to the fourth-preference category, which includes religious workers.

We have seen this case before, when we held that the regulation was not contrary to the statute and remanded to the district court to consider plaintiffs' remaining contentions. *Ruiz-Diaz v. United States*, 618 F.3d 1055 (9th Cir. 2010).

On remand, the district court rejected all of the plaintiffs' remaining arguments, and the plaintiffs now raise three of them on appeal. They are that the regulation violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, and the constitutional protections of equal protection and due process. The contentions all stem from frustration with the lag in the agency's processing of employers' petitions and the resulting delay in plaintiffs' ability to file their visa applications. If there is no pending visa application when a plaintiff's initial five-year visa expires, unlawful presence time begins to accrue, with deleterious immigration consequences. Therefore, as we have earlier stated, "Ruiz-Diaz's real concern is that USCIS does not process the petition for a special immigrant religious worker visa soon enough." *Ruiz-Diaz*, 618 F.3d at 1061.

## RELIGIOUS FREEDOM RESTORATION ACT

Plaintiffs' first contention is that the regulation violates RFRA because it substantially burdens the exercise of their religion. RFRA requires the federal government to show that it is advancing a compelling interest through the least restrictive means possible where the government "substantially burden[s] a person's exercise of religion," even where, as here, the burden results from a rule of general applicability. 42 U.S.C. § 2000bb-1. We have held that the government imposes a substantial burden "only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008) (en banc) (internal citations omitted).

In *Navajo Nation*, we cited *Sherbert v. Verner*, 374 U.S. 398 (1963), as an example of a forced choice that Congress intended to prevent by passing RFRA.  In *Sherbert*, the Supreme Court found that an agency's decision to deny unemployment benefits because of a claimant's religious objection to working on Saturday burdened her exercise of religion.  Under those circumstances, the claimant was forced to choose between the tenets of her religion—following the prohibition on Saturday work—and receiving a governmental benefit—unemployment payments.  *Id.* at 405–06.  Also in *Navajo Nation* we cited *Wisconsin v. Yoder*, 406 U.S. 205 (1972), as an example of the second type of substantial burden on religious exercise RFRA was intended to prevent. In *Yoder*, the Supreme Court held that a state criminal statute that required parents to send their children to public or private school infringed on the religious liberties of Amish parents whose beliefs did not permit their children to attend high school.  *Id.*  The Supreme Court in *Employment Division v. Smith*, 494 U.S. 872 (1990), overruled *Sherbert* and *Yoder*, and we held in *Navajo Nation* that by passing RFRA, Congress intended to restore those principles and prevent such burdens on religious exercise in the future.  *Navajo Nation*, 535 F.3d at 1067–69.

The fundamental flaw in the plaintiffs' reliance on RFRA is that the challenged regulation does not affect their ability to practice their religion.  They are subject to removal after five years because their visas have expired, not because they are practicing their religion.  Their inability to file their applications concurrently with their employers' petitions may well delay religious workers from adjusting status before their temporary visas expire, but it does not prevent them from practicing their religion.  Nor does the delay in their ability to file visa applications require plaintiffs to give up

any tenet of their religion to access a government benefit, i.e., LPR status. As the district court observed, "[g]iving up one's religious practices would not improve the chances of obtaining adjustment of status or help the alien avoid deportation: in fact, abandoning the religious work on which the alien's admission was premised could preclude the requested relief." Accordingly, the regulation does not impose a substantial burden on plaintiffs' religious exercise and therefore does not violate RFRA.

## EQUAL PROTECTION

Plaintiffs' second contention is that the regulation violates Equal Protection principles on the theory that it discriminates on the basis of religion. The regulation, of course, does not target any religious group. It affects all members of the fourth-preference visa category who have been admitted on employment-based visas. *See* 8 U.S.C. § 1101(a)(27).

Even assuming immigrant religious workers are being treated differently from other employment-based visa applicants, the difference requires only a rational basis to survive an Equal Protection challenge. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens."). The government has satisfied that standard. It has shown that there have been concerns about fraud in the religious worker visa program, and as a result, the government has encountered difficulties in determining which applicants are bona fide religious workers. *See, e.g.*, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Fraud Detection and National Security,

Religious Worker Benefit Fraud Assessment Summary (2006); U.S. Government Accountability Office, Immigration Benefits: Additional Controls and a Sanctions Strategy Could Enhance DHS's Ability to Control Benefit Fraud 4 (2006).

We apply rational basis rather than heightened scrutiny because we defer to the political branches in the immigration field. *See Mathews*, 426 U.S. at 81 ("Since decisions in [immigration] matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary."); *Ram v. I.N.S.*, 243 F.3d 510, 517 (9th Cir. 2001) ("'Line-drawing' decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose."). The district court expressed it well when it concluded:

> The bar on concurrent filings is a rational regulatory attempt to reduce fraud in the religious worker program. Given the government's legitimate interest in reducing fraud and the broad deference courts show the determinations of political branches in the context of immigration, the bar on concurrent filings withstands [Equal Protection] scrutiny.

(footnote omitted).

**DUE PROCESS**

Plaintiffs' third contention is that the regulation violates due process. This argument also is rooted in the delays they experience in having applications processed, delays that often mean that their five-year visas have expired before their employers' petitions can be acted upon. *Ruiz-Diaz*, 618 F.3d at 1062 ("[D]elay is in effect denial."). Delay may indeed be indicative of a system that is not working effectively. But the regulatory bar against concurrent filings, enacted for valid reasons, is not what gives rise to these delays. Rather, the delays stem from routine processing times.

While the regulation may compound frustration caused by delay, plaintiffs cannot claim that their due process rights have been violated unless they have some "legitimate claim of entitlement" to have the petitions approved before their visas expire. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (requiring a "legitimate claim of entitlement" to a governmental benefit for due process analysis). We have already held that the adjustment of status statute does not confer a right to concurrent filings. *See Ruiz-Diaz*, 618 F.3d at 1061. In *Ruiz-Diaz*, we held that the agency reasonably interpreted the statute to mean that the agency had to approve the employer's petition for the visa before it considered the non-citizen's application. "It is not manifestly contrary to the statute for the agency to accept the applications of alien beneficiaries of special immigrant religious worker visas for filing and processing only when [the petitions have been approved]." *Id.* Beyond the statute, the plaintiffs point to no other conceivable source of a claim of entitlement to concurrent filing or to earlier dispositions.

Plaintiffs' due process argument further relies on cases, unlike this one, in which individuals had a statutory or constitutional right to the governmental benefit at issue. In *Ex Parte Hull,* 312 U.S. 546 (1941), for example, the Supreme Court struck down a prison regulation requiring all inmate legal documents to be cleared by the parole board. The Court found that the regulations prevented prisoners from filing petitions for writs of habeas corpus and were thus unconstitutional. *Id.* at 549. Similarly, in *Orantes-Hernandez v. Thornburgh,* 919 F.2d 549 (9th Cir. 1990), we upheld an injunction requiring an immigration agency to give notice to certain refugees of their statutory right to apply for asylum, because the agency had impeded the refugees' ability to apply. *Id.* at 557. In contrast, here we have explicitly found that the underlying statute does not confer a right of concurrent application to the plaintiffs. *Ruiz-Diaz*, 618 F.3d at 1061. Therefore, even if the regulation makes it more difficult for plaintiffs to obtain adjustment of status, it does not violate due process as there is no legitimate statutory or constitutional claim of entitlement to concurrent filings.

In sum, the regulation does not bar religious workers from applying for adjustment of status. The regulation has only the practical effect of making it necessary for religious employers to file visa petitions earlier. There is therefore no violation of plaintiffs' due process rights.

**AFFIRMED**.