In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2787

SOCIETY OF THE DIVINE WORD,
Chicago Province, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21-cv-3650 — **Robert W. Gettleman**, *Judge*.

ARGUED APRIL 16, 2024 — DECIDED FEBRUARY 24, 2025

Before ST. EVE, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. United States Citizenship and Immigration Services (USCIS) administers the employment-based visa program that Congress established in the Immigration and Nationality Act. In 2002, USCIS adopted a rule that allows some categories of nonimmigrant

workers—that is, workers in the United States only temporarily—to file their applications for special immigrant worker status and permanent resident status concurrently. This "concurrent filing" rule effectively speeds up the process by which eligible applicants can attain permanent resident status, and it allows applicants to remain in the United States while their application is pending. But USCIS did not make concurrent filing available to everyone in the employment-based visa program. For example, USCIS did not extend concurrent filing to special immigrant religious workers because it found that visa category was more susceptible to fraud.

A group of religious organizations who employ nonimmigrant workers brought this lawsuit challenging the regulation against USCIS, the Secretary of the Department of Homeland Security, and the director of USCIS's California Service Center (we refer to these three defendants collectively as "USCIS"). Plaintiffs allege that, in not offering concurrent filing to the category for religious workers, USCIS violated the First and Fourteenth Amendments, the Religious Freedom and Restoration Act, the Immigration and Nationality Act, and the Administrative Procedures Act. The district court disagreed. It dismissed the APA claim as time-barred and entered summary judgment in USCIS's favor on the remaining claims. Given subsequent changes in Supreme Court law, we remand the APA claim. But finding no error in the summary judgment decision, we affirm the other claims.

**I**

**A. Statutory & Regulatory Background**

In the Immigration and Nationality Act (INA), Congress established five distinct employment-based visa categories for would-be immigrants. The first category (EB-1) is for individuals with exceptional abilities in various fields, including sciences, arts, education, business, athletics, as well as certain executives, managers, professors, and researchers. *See* 8 U.S.C. § 1153(b)(1). The second category (EB-2) is for professionals with advanced degrees, s*ee id*. at § 1153(b)(2), while the third (EB-3) is for professionals, skilled workers, and unskilled workers, *see id*. at § 1153(b)(3). The fourth category (EB-4) includes special immigrant religious workers, physicians, Iraqi/Afghan translators, broadcasters, NATO and international organization employees, and Panama Canal workers. *See id*. at § 1153(b)(4); 8 U.S.C. § 1101(a)(27). The fifth category (EB-5) is for investors. *See id*. at § 1153(b)(5). Relevant here, religious workers and organizations who want to attain employment-based visas on their behalf are not required to petition in the EB-4 category; they have the flexibility to choose among the other categories as well, if they meet the criteria.

This dispute involves religious organizations that petitioned for religious workers under the EB-4 category. Typically, the process for obtaining a special immigrant religious worker visa begins with the employer filing a Form I-129 for a temporary visa, also called an "R-1" visa. The R-1 visa allows a nonimmigrant worker to temporarily live and work in the United States, under certain conditions. *See* 8 C.F.R. § 214.2(r). The R-1 visa, like other nonimmigrant visas, is issued for a limited duration, typically up to two-and-a-half

years, with the option to extend it for an additional two-and-a-half years. *See id.* at § 214.2(r)(5), (6). For organizations petitioning for workers in the EB-4 category, the problem arises when the R-1 visa expires. At that point, the nonimmigrant worker must depart from the United States unless the worker has sought to extend, change, or adjust status before the authorized stay period expired.[1] If the nonimmigrant worker fails to timely depart the United States or obtain alternative lawful status, the worker will be in unlawful status and may begin to accrue unlawful presence, which prevents the worker from applying for permanent resident status later. *See Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017).

While temporary nonimmigrant workers in the EB-4 category are present in the United States, their employer can file a Form I-360, Petition for Special Immigrant. *See* 8 C.F.R. § 204.5(m). The benefit of filing a Form I-360 is that, if approved,

---

[1] Section 245(a) of the INA, 8 U.S.C. § 1255(a), sets forth the basic requirements for adjusting an immigrant's status to that of a lawful permanent resident. That section provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

it allows the temporary religious worker to apply for a (more permanent) immigrant visa either from abroad or, if already in the United States, apply for adjustment of status to that of a lawful permanent resident (via a separate form, Form I-485, discussed below). *See* 8 C.F.R. § 245.2(a)(3). Form I-360 requires employers to certify that the employer is a "bona fide non-profit religious organization" or affiliate; that "the [noncitizen] has worked as a religious worker for the two years immediately preceding the filing of the application and is otherwise qualified for the position offered;" and that "the [noncitizen] has been a member of the denomination for at least two years immediately preceding the filing of the application." 8 C.F.R. § 204.5(m)(7).

Nonimmigrant workers who wish to extend, change, or adjust their status must file a Form I-485, Application to Register Permanent Residence or Adjust Status. But the application process is not as streamlined for EB-4 workers as it is for workers in the first three EB categories. Title 8 C.F.R. § 245.2, which was promulgated as an interim rule on July 31, 2002, outlines the process for filing adjustment-of-status applications for each category. *See* 67 Fed. Reg. 49561 (July 31, 2002) (codified at 8 C.F.R. § 245.2(a)(2)(i)(B)). It provides in pertinent part:

> If, at the time of filing, approval of a visa petition filed for classification under section 201(b)(2)(A)(i), section 203(a) or section 203(b)(1), (2) or (3) of the Act would make a visa immediately available to the alien beneficiary, the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the

visa petition, provided that it meets the filing re-
quirements contained in parts 103 and 245. *For
any other classification, the alien beneficiary may file
the adjustment application only after the Service has
approved the visa petition.*

8 C.F.R. § 245.2(a)(2)(i)(B) (emphasis added). In other words,
for the EB-1, EB-2, and EB-3 categories, adjustment of status
applications (Form I-485) can be filed concurrently with, or
after, their immigrant petitions (Form I-140). This is called the
"concurrent filing" rule. EB-4 workers are not included in this
rule. Their special immigrant petitions (Form I-360) must be
approved *before* they can file an adjustment of status applica-
tion.

Religious workers in the EB-4 category differ from other
employment-based visa beneficiaries in other ways, too. For
example, unlike employers in other categories who must first
seek labor certification, which requires employers to test the
U.S. labor market before hiring foreign labor, employers peti-
tioning for EB-4 special immigrant religious workers are ex-
empt from the labor certification requirement. *See* 8 U.S.C.
§ 1182(a)(5)(A)(ii). In addition, Congress provided that USCIS
shall make premium processing available to employers who
petition under the EB-1, EB-2, and EB-3 categories, but com-
mitted the decision of whether to make premium processing
available to other visa categories to the discretion of the
agency, *see* 8 U.S.C. § 1356(u)(2)(B), (E), which, to date, has not
extended premium process to the EB-4 category. Finally, Con-
gress has determined that a maximum of 5,000 visas may be
granted annually in the EB-4 category, while the numbers are
much larger in the other categories. *See* 8 U.S.C.
§§ 1101(a)(27)(C), 1153(b)(4).

## B. Procedural Background

Plaintiffs are religious organizations that sponsored and seek to sponsor special immigrant religious workers in the EB-4 category to fill roles within their organizations. They are Baptists, Catholics, Methodists, Lutherans, Baha'is, Hindus, and others, with members across the United States. To serve their many congregants and followers, as told in Plaintiffs' operative complaint, they "use and rely on the fair and timely adjudication of immigrant visa petitions and applications for immigration benefits to ensure their ability to select ministers of their own choosing."

Plaintiffs initiated this action on July 9, 2021, challenging USCIS's authority to promulgate 8 C.F.R. § 245.2(a)(2)(i)(B), which precludes special immigrant religious workers from filing concurrently the Form I-360 Petition for Special Immigrant and the Form I-485 Application to Register Permanent Residence or Adjust Status. Plaintiffs allege that the regulation violates the First Amendment, the Due Process and Equal Protection Clauses of the Constitution, the INA, the Religious Freedom Restoration Act (RFRA), and the Administrative Procedures Act (APA).

Specifically, Plaintiffs allege that the concurrent filing regulation violates the Free Exercise and Establishment Clauses, the Due Process Clause, and the Equal Protection Clause because it "expressly distinguishes between non-religious and religious employers, and withholds the benefit of concurrent filing of visa petitions and adjustment of status applications only from religious employers." It also violates RFRA, they allege, because it places a substantial burden on their religious exercise by depriving them of the ability to select and retain the ministers of their choice.

Plaintiffs allege that the regulation violates the INA because it creates "separate standards and limit[s] who may apply for adjustment of status based on whether the underlying visa petition is from a non-religious employer or a religious employer," even though the statute contains no such distinction. "Under the statute, USCIS may deny a deniable filing, but it may not reject a properly filed application." Finally, Plaintiffs allege that the regulation violates the APA because the agency exceeded its authority in promulgating it. To remedy their harm, Plaintiffs seek declaratory and injunctive relief and an order requiring USCIS to accept concurrent filings from nonimmigrant religious workers and "immediately adjudicate" their pending applications.

USCIS moved to dismiss the complaint, arguing that (1) Plaintiffs did not have standing because they did not have a redressable injury, and (2) Plaintiffs' *ultra vires* challenge under the APA was barred by the statute of limitations. The district court denied the motion to dismiss as to standing but granted it as to the APA claim. *See Soc'y of Divine Word v. U.S. Citizenship & Immigr. Servs.*, No. 21 CV 3650, 2022 WL 17820973 (N.D. Ill. Dec. 20, 2022). The parties then filed cross motions for summary judgment on all remaining claims.

The district court granted USCIS's motion for summary judgment and denied Plaintiffs' motion. *See Soc'y of Divine Word v. U.S. Citizenship & Immigr. Servs.*, 683 F. Supp. 3d 799, 802 (N.D. Ill. 2023). The court first returned to the question of standing, now that the summary judgment record had been developed, and addressed whether Plaintiffs' INA claim was time-barred. On standing, the court found that the declarations Plaintiffs filed describing their plight sufficiently support their theory of standing, which is based on "allegations

of disparate and discriminatory treatment." *Id*. at 806. The court agreed with USCIS that Plaintiffs' INA claims were time-barred because those claims implicated USCIS's discretionary authority to promulgate regulations. *Id*. at 807. But Plaintiffs' First Amendment and RFRA claims were not time-barred because those claims focused on the way in which "USCIS's regulation continues to impact plaintiffs' specific employment decisions, and their participation in the process of obtaining employment-based visas." *Id*.

On the merits, the district court ruled that the regulation does not violate RFRA because it does not affect religious practice. *Id*. at 809. The rule merely "requires employers to plan the timing of employment decisions based on immigration status, and potentially limits the pool of qualified applicants that plaintiffs can choose from if they fail to plan accordingly." *Id*. And limiting the pool is not the same as interfering with the organization's hiring decisions because the rule "does not pressure [the organization] into picking, or not picking, certain ministers within the available pool, or otherwise interfere with matters of faith, doctrine, or 'closely linked matters of internal government.'" *Id*. (quoting *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020)). Having concluded that USCIS was entitled to summary judgment on the RFRA claim, the court found that the agency was "necessarily entitled to summary judgment" on the Free Exercise and Establishment Clause counts because "Congress enacted the RFRA to protect a broader range of religious exercise than the First Amendment." *Id*. But the court held in the alternative that the First Amendment claims would still be denied on their own merits because "§ 245.2(a)(2)(i)(B)'s prohibition on concurrent filing is not based on plaintiffs' religious

identity." *Id*. at 810. In other words, the regulation is neutral and generally applicable.

Lastly, the district court analyzed Plaintiffs' Due Process and Equal Protection claims. Following *Ruiz-Diaz v. United States* (*Ruiz-Diaz III*), 703 F.3d 483, 487 (9th Cir. 2012), the district court found that the concurrent filing rule "is not based on religion; it is based on the demonstrated risk of fraud in the special immigrant religious worker program, which is not subject to other requirements that might avoid fraud in other employment-based categories." *Id*.

Plaintiffs now appeal to us. Plaintiffs agreed at oral argument that they did not preserve their Equal Protection, Due Process, and INA claims in their Opening Brief, so we do not review those. After taking a brief jurisdictional detour, we proceed to Plaintiffs' APA, RFRA, and First Amendment claims. We remand the APA claim and affirm the district court on the RFRA and First Amendment claims.

## II

USCIS argues we should not reach the merits of Plaintiffs' claims because Plaintiffs do not have standing. USCIS maintains Plaintiffs have not shown that 8 C.F.R. § 245.2(a)(2)(i)(B) will cause imminent harm to them or that their injuries are redressable by a ruling of this court. As USCIS sees it, only six of the sixteen Plaintiffs submitted declarations "purporting to show" standing, and none of those declarations provide "any actual facts, separate from conclusory statements, showing that they will again hire religious workers as temporary five-year R-1 nonimmigrants, and after that, they will again decide to file a Form I-360 religious worker petition on behalf of the worker." And Plaintiffs' claims are not redressable, USCIS

urges, because even if we did order concurrent filing for religious workers in the EB-4 category, these Plaintiffs would still not be able to file because of other regulatory and statutory barriers. We assess each argument in turn.

To invoke "the federal judicial power," a plaintiff must have a "'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). Establishing standing requires a plaintiff to allege or prove that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the summary judgment stage, it is not enough that a plaintiff's allegations support standing; the plaintiff must be able to establish standing by reference to competent evidence in the summary judgment record. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

USCIS does not contest the traceability prong, so we limit our standing analysis to the injury-in-fact and redressability prongs. We conclude that Plaintiffs have satisfied both.

## A. Injury in Fact

In the ordinary course, to meet the injury-in-fact requirement, we require plaintiffs to prove that their injuries are "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). But imminence is not strictly defined by temporal proximity; it can also "depend[] on the probability of harm." *520 Michigan Ave. Assocs., Ltd. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006). Thus, plaintiffs can have standing to challenge a statute or regulation even if the

statute or regulation has not yet been enforced against them. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). This is called pre-enforcement review, and it is the basis of Plaintiffs' standing argument.

We can hear Plaintiffs' pre-enforcement challenge if they show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute [or regulation]." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Importantly, Plaintiffs need not "show or confess that [their] intended conduct will actually violate the statute [or regulation] in question." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023). They need only show that "the risk of [enforcement] is 'credible,'" and that "their fear is both actual and reasonable." *Id*. (quoting *Babbitt*, 442 U.S. at 298).

Applying this standard here, we first consider whether Plaintiffs have shown that they intend to engage in conduct "arguably affected with a constitutional interest." *Babbitt*, 442 U.S. at 298. In doing so, we are mindful that Plaintiffs "are not required to show that they will win on the merits of their constitutional claims." *Brown*, 86 F.4th at 761. It is enough that their claim is "arguabl[e]." *Id.*

Plaintiffs have made this showing. Plaintiffs contend that the contested regulation interferes with their ability to select and retain ministers of their choosing, in violation of RFRA and the First Amendment. In support of that argument, they submitted several declarations explaining that they rely on foreign-born ministers to advance their religious missions. The declarations explain that, because Plaintiffs' ministers are here on R-1 visas and cannot apply for adjustment of status concurrently with their Form I-360 Petitions, they have

government-imposed, temporal limits on their service to Plaintiffs' organizations. As a result, Plaintiffs often have to part ways with their ministers far sooner than they would like. According to the declarations, the regulation's negative impacts are not confined to their effect on Plaintiffs' ability to retain ministers once the ministers are in the United States. Plaintiffs say the rule also makes recruiting ministers more difficult because it discourages them from applying on the front end.

The declarations make clear that Plaintiffs intend to continue using nonimmigrant religious workers in the EB-4 category and to file adjustment of status applications on their behalf. In fact, at the time they submitted the declarations, some of the Plaintiffs were seeking to file adjustment of status applications on behalf of their foreign-born ministers. For those Plaintiffs, the lack of concurrent filing meant that the organizations had to file Form I-360 religious worker petitions far earlier in their employment relationship with a minister than the organizations otherwise would have liked. An organization must do so in case it discovers later that it wants to keep a minister longer than a temporary visa would allow. After all, the Form I-360 must be approved before the organization can file a minister's adjustment of status application.

We observe, without reaching the merits of Plaintiffs' claim, that the First Amendment protects a religious organization's ability to determine for itself who its ministers will be (RFRA does too). *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188–89 (2012). Consequently, we conclude that the facts alleged in Plaintiffs' declarations provide a sufficient basis from which to conclude that Plaintiffs

have presented a claim that is "arguably affected with a constitutional interest." *Babbitt*, 442 U.S. at 298.

We are also satisfied at this stage that Plaintiffs' intended course of conduct is proscribed by the challenged regulation. Nearly all of Plaintiffs' declarations explain that they would have preferred to file their workers' adjustment of status applications concurrent with their Form I-360 special immigrant religious worker petitions, but the regulation prohibited them from doing so. And when some Plaintiffs tried to skirt the regulation and file the adjustment of status application before or concurrent with the Form I-360, USCIS denied their application and referred them to the regulation barring concurrent filing for religious workers. Those attestations are sufficient to indicate that the challenged regulation does, in fact, proscribe Plaintiffs' desired conduct—a fact that USCIS does not dispute.

## B. Redressability

Next, we consider whether Plaintiffs have satisfied the redressability element of the standing analysis. That element "examines the causal connection between the alleged injury and the judicial relief requested." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). An injury is redressable if it is "'likely'" and not "merely 'speculative'" that the plaintiff's injury will be remedied by the relief plaintiff seeks. *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)).

We conclude Plaintiffs' injuries are redressable. Were we to hold that the contested regulation violates either RFRA or the First Amendment and enjoin its enforcement against

Plaintiffs, Plaintiffs would be able to file their employees' visa petitions and adjustment of status applications concurrently. That is exactly the relief they seek.

USCIS does not contest that we have the power to award declaratory or injunctive relief or that such relief would result in Plaintiffs' desired outcome (access to the concurrent filing scheme). Instead, USCIS argues that, even if we ruled in Plaintiffs' favor, Plaintiffs would still not be eligible to file their adjustment of status applications concurrently because the statutory scheme requires that there be a visa available before an adjustment of status application can be approved for filing, *see* 8 U.S.C. § 1255(a), and there are no more visas available in the EB-4 category. To be eligible for a visa, USCIS explains, Plaintiffs would have had to file their R-1 petitions prior to February 1, 2022. Because they did not, they are ineligible for concurrent filing under a separate provision of the immigration laws. But Plaintiffs have not challenged that regulation, USCIS argues, so this action cannot redress the problems posed by it.

We are unpersuaded by USCIS's argument. While it is true that Plaintiffs might continue to face barriers to having their nonimmigrant employees' applications approved down the line, those barriers are no different from the ones organizations and workers in the EB-1, -2, and -3 categories face under the concurrent filing regime. As we read Plaintiffs' complaint, the harm they allege is the inability to file their special immigrant religious worker petition and adjustment of status application concurrently like other employers and workers in the employment-based visa program. The relief they seek is to be put on the same playing field as workers in those other categories, not to be placed in a superior position. Thus, for

purposes of the redressability question, our analysis is limited to the threshold question of whether Plaintiffs ought to be permitted to concurrently file. That Plaintiffs' nonimmigrant religious workers ultimately might not get a visa has no bearing on that question. Plaintiffs' alleged harm is redressable.

Accordingly, we hold that Plaintiffs have presented sufficient evidence to establish standing to bring their pre-enforcement challenges.

## III

Plaintiffs first argue that their APA claim was timely and thus the district erred in dismissing it. USCIS counters that Plaintiffs did not plead anything suggesting the agency took action to enforce or apply the concurrent filing bar against them, which makes this a facial challenge. And, under the APA, USCIS continues, facial challenges to a regulation must be brought within six years of the regulation's promulgation. At the time USCIS filed its brief and presented oral argument, its position had some merit. Though our circuit had never reached the question, USCIS's argument was backed by six other courts of appeals. *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991); *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Harris v. FAA*, 353 F.3d 1006, 1009–10 (D.C. Cir. 2004); *Hire Ord. Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012); *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1111–12 (Fed. Cir. 2020); *N.D. Retail Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 55 F.4th 634, 639–40 (8th Cir. 2022).

But then came the Supreme Court's decision in *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024), holding to the contrary. Corner Post sued the

Board of Governors of the Federal Reserve System under the APA, challenging a rule the Board adopted in 2011 to govern interchange fees for debit-card transactions. The Eighth Circuit agreed with the district court that, because plaintiffs levied a facial challenge to the rule, they had six years from the day the rule was promulgated to challenge it. *N.D. Retail Ass'n*, 55 F.4th at 641. That meant that all facial challenges brought after 2017 were time-barred. The problem was that Corner Post did not open for business until the following year. Still, the Eighth Circuit held, consistent with the majority of our sister circuits, that Corner Post's APA claim was time-barred.

The Supreme Court reversed. The Court held that a plaintiff's challenge to a final agency action does not accrue under the APA until the plaintiff is injured by the action. *Corner Post*, 144 S. Ct. at 2452–53. The Court reasoned that, because litigants can bring civil actions against the government challenging a regulation only after they are injured, their claims cannot accrue before that date. *Id*. at 2450. And the fact that a plaintiff's challenge might be facial as opposed to as-applied makes no difference. *Id*. at 2453. In either case, we look to when the plaintiff was injured by a final agency action.

Here, Plaintiffs have alleged both completed and ongoing injuries stemming from the agency's concurrent filing bar. Recall the allegations in Plaintiffs' declarations. Plaintiffs explain that, to date, they have been unable to file their Form I-360 petitions and adjustment of status applications concurrently and that, if they try, their applications are denied under the concurrent filing bar. They allege that this harm is ongoing, as they have workers for whom they would like to file concurrent applications, but the regulation does not permit

them to do so. Because of the continuing nature of Plaintiffs' harms, we conclude that their injuries are present and ongoing, so as to bring them within the statutory accrual period defined in *Corner Post*.

The Parties agree that if the APA claim is not time-barred, it is appropriate to remand. Accordingly, we return this claim to the district court for further proceedings.

**IV**

Plaintiffs next argue that 8 C.F.R. § 245.2(a)(2)(i)(B) violates the Religious Freedom Restoration Act (RFRA) because it substantially burdens their ability to select and retain ministers of their choice. As they see it, the government has forced them into a binary choice: remove their chosen minister or "risk[] government sanctions against the religious organization . . . and penalties on the[] ministers." They believe that choice "coerce[s]" them "into acting against their religious convictions." We disagree.

RFRA forbids the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb–1(a). In passing RFRA, Congress sought to "create[] a broad statutory right," *Korte v. Sebelius*, 735 F.3d 654, 671 (7th Cir. 2013), that "provide[s] greater protections for religious exercise than is available under the First Amendment," *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). Thus, under RFRA, a law or regulation that substantially burdens a person's exercise of religion cannot stand unless the government can show that it (1) furthers "a compelling governmental interest," and (2) is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1(b). In this way, the statute sets up a burden-

shifting framework: "Once a RFRA claimant makes a prima facie case that the application of a law or regulation substantially burdens his religious practice, the burden shifts to the government to justify the burden under strict scrutiny." *Korte*, 735 F.3d at 673 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 481, 428 (2006)). Where, as here, a claimant is unable to show that the law or regulation substantially burdens their exercise of religion, the claim fails and the court need not reach the strict scrutiny prong.

*Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), guide our application of the substantial burden test. *See* 42 U.S.C. § 2000bb(b)(1) (declaring that RFRA's "purpose[]" was to "restore" the test set forth in *Sherbert* and *Yoder*).

In *Sherbert*, the appellant, a Seventh-day Adventist, was fired for refusing to work on Saturdays. 374 U.S. at 399. Unable to find employment that did not require Saturday work, she applied for unemployment benefits. The South Carolina Unemployment Commission denied her claim because state law disqualified claimants who "failed, without good cause . . . to accept available suitable work when offered." *Id*. at 401. She argued before the state courts that this law abridged her right to free exercise of religion in violation of the First Amendment. She lost at every level until she reached the United States Supreme Court. The Court held that the government substantially burdened Sherbert's religious practice by effectively forcing her to "choose between following the precepts of her religion [by resting, and not working on her Sabbath] and forfeiting [Social Security] benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." *Id.* at 404.

The defendant-appellees in *Yoder* were members of the Old Order Amish religion and the Conservative Amish Mennonite Church. *Yoder*, 406 U.S. at 207. They were convicted and fined in Wisconsin state court for violating the state's compulsory school attendance law, which required parents to send their children to school until age 16. They defended on the ground that the law violated their right to free exercise of religion. The Wisconsin Supreme Court agreed with defendants, but the state appealed. On review, the United States Supreme Court held that Wisconsin's compulsory school attendance law violated the First Amendment because it "affirmatively compel[led] [defendants], under threat of criminal sanction, to perform acts undeniably at odds with the fundamental tenets of their religious beliefs." *Id.* at 218.

From the *Sherbert-Yoder* line of cases, we have identified three ways plaintiffs can prove that a law or regulation substantially burdens their religious practice. They must show that it either (1) compelled them to "perform acts undeniably at odds with fundamental tenets of [their] religious beliefs," (2) "put[] substantial pressure on [them] to modify [their] behavior and to violate [their] beliefs," or (3) "bears direct, primary, and fundamental responsibility for rendering [a] religious exercise . . . effectively impracticable." *Korte*, 735 F.3d at 682 (internal quotations and citations omitted). "In assessing whether a burden is substantial, we 'focus[] primarily on the intensity of the coercion applied by the government' and not the centrality of the religious practice in question." *West v. Radtke*, 48 F.4th 836, 845 (7th Cir. 2022) (quoting *Korte*, 735 F.3d at 683).

Plaintiffs have not made the requisite showing of substantiality. Unlike the plaintiffs in *Sherbert* and *Yoder*, Plaintiffs

have failed to identify any religious belief they are required to violate to comply with the contested regulation. To be sure, we are not in the business of questioning the centrality of a claimant's religious beliefs, *see Korte*, 735 F.3d at 683, and we take at face-value the claimant's stated belief, so long as the belief is honest. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014). But to assess whether a given regulation substantially burdens a religious belief, we must know what beliefs the claimant contends the regulation offends.

Plaintiffs do not identify a belief or set of beliefs they have to violate because of the regulation. Instead, they offer a broader, structural argument—that the regulation places a substantial burden on their religious exercise because it allows for "undue Government interference" with their ability to "select and employ their own ministers." Taking this claim on its own terms, it does not rise to the level of a substantial burden for purposes of stating a RFRA violation. There is no assertion that the regulation prevents Plaintiffs from practicing their religion. It does not require them to select or refrain from selecting any particular minister. And it does not otherwise pressure or coerce Plaintiffs into violating any tenet of their religion, as far as we can tell from the complaint and declarations. We agree with the district court that, at most, the regulation "requires employers to plan the timing of employment decisions based on immigration status, and potentially limits the pool of qualified applicants that plaintiffs can choose from if they fail to plan accordingly." *Soc'y of Divine Word*, 683 F. Supp. 3d at 809. That is not a substantial burden on religious beliefs or practice.

We are not alone in resolving the substantial burden question this way. The Ninth Circuit reached the same conclusion

in a similar RFRA challenge to the same regulation over a decade ago. In *Ruiz-Diaz v. United States*, a class of non-citizen religious workers argued that the regulation's lack of concurrent filing for religious workers substantially burdened their exercise of religion. 703 F.3d at 485. The Ninth Circuit disagreed:

> The fundamental flaw in the plaintiffs' reliance on RFRA is that the challenged regulation does not affect their ability to practice their religion. They are subject to removal after five years because their visas have expired, not because they are practicing their religion. Their inability to file their applications concurrently with their employers' petitions may well delay religious workers from adjusting status before their temporary visas expire, but it does not prevent them from practicing their religion. Nor does the delay in their ability to file visa applications require plaintiffs to give up any tenet of their religion to access a government benefit . . . .

*Id*. at 486. The same logic applies here.

Plaintiffs argue that we should not rely on *Ruiz-Diaz* because that case "discussed only claims relating to individual workers, and did not expressly address claims from the religious organizational plaintiffs." But that is a distinction without a difference. What constitutes a substantial burden on religious practice does not turn on the identity of the plaintiff to such an extent that it requires the opposite result in this case. The relevant (and important) similarities are that (1) the harm the *Ruiz-Diaz* plaintiffs alleged is the same as that Plaintiffs

have alleged, and (2) the nature and substance of the claims are identical.

For these reasons, we conclude that Plaintiffs have failed to meet their burden under the substantial burden prong, so we need not consider whether USCIS has demonstrated a compelling interest that is narrowly tailored.

## V

Plaintiffs also argue that the regulation violates the First Amendment's Free Exercise and Establishment Clauses. The district court dismissed these challenges as "duplicative," reasoning that RFRA "protect[s] a broader range of religious exercise than the First Amendment," so claims that fail under RFRA necessarily fail under the First Amendment. *Soc'y of Divine Word*, 683 F. Supp. 3d at 809–10. The court held in the alternative that the regulation does not violate the First Amendment because it "is not based on plaintiffs' religious identity," but on the risk of fraud in the religious worker program. *Id*. at 810. We need only briefly analyze the First Amendment claims because, for both, Plaintiffs rely on showing a substantial burden on their religious practice—an issue the RFRA analysis resolves against them.

## A. Free Exercise Clause

One primary difference between the Free Exercise Clause and RFRA is that the former "does not require the accommodation of religious practice." *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006). The Free Exercise Clause permits the government to "enforce neutral rules" even if they might have some incidental impact on religious practice. *Id.* RFRA does not—unless, of course, the government can satisfy strict scrutiny. *See* 42 U.S.C. § 2000bb–1. As a result, our analysis of

RFRA claims is often more solicitous of plaintiffs' religious beliefs and practices than our Free Exercise Clause analyses.

It makes sense, then, that the district court concluded that the Free Exercise Clause analysis was subsumed within the RFRA analysis. The court was on solid ground in doing so. Other circuits have concluded that plaintiffs who fail to carry their burden under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")—RFRA's sister statute that extends RFRA's framework to the states—necessarily fail under the Free Exercise Clause. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022) ("If a claim fails under the RLUIPA—which embeds a heightened standard for government restrictions of the free exercise of religion—it necessarily fails under the First Amendment."); *Watson v. Christo*, 837 F. App'x 877, 883 n.11 (3d Cir. 2020) (same).

Although we have not been so direct, we hinted at the same rule in *Borzych*. There, we explained that the plaintiff's RLUIPA argument was his "best," and given that the RLUIPA standard is more demanding than the First Amendment's, "it [was] unnecessary to discuss the Constitution further." *Borzych*, 439 F.3d at 390. We join our sister circuits in making explicit what we implied in *Borzych*: where a plaintiff's theory is the same under RFRA or RLUIPA and the Free Exercise Clause, it is not error for the district court to dismiss the plaintiff's Free Exercise Clause claim on the basis of its RFRA or RLUIPA analysis.

## B. Establishment Clause

Unlike a Free Exercise Clause claim, an Establishment Clause claim does not require a substantial burden on religion. *See Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013)

(explaining the Clause is violated where the government's practice favors one religion without a legitimate secular reason). Since a finding of substantial burden is not needed, an Establishment Clause claim is not always governed by the RFRA or RLUIPA analysis. But here it is.

Plaintiffs' only argument under the Establishment Clause is that the regulations substantially burden their religious practice by undermining their ability to select their own ministers. The Clause, which limits government involvement in ecclesiastical decisions, is violated where the government "requir[es] a church to accept or retain an unwanted minister or punish[es] a church for failing to do so." *Hosanna-Tabor*, 565 U.S. at 188. As we explained above, Plaintiffs do not show that USCIS's regulations overly burden their religious practice by forcing ministers on them or otherwise. Since our RFRA analysis resolves this claim, we affirm the district court's decision to grant summary judgment to USCIS.

## VI

For these reasons, we REMAND the APA claim to the district court for further proceedings and AFFIRM the judgment of the district court on the RFRA and First Amendment claims.